A90A0289. INSURANCE COMPANY OF PENNSYLVANIA v.
GILES et al.
(395 SE2d 833)

BEASLEY, Judge.

Giles obtained a judgment of $1,495,000 on January 9, 1987, for injuries to herself and for the death of her husband in an automobile collision. Appellant insurer had issued the liability policy covering the automobile operated by Guy, one of the two defendants against whom Giles recovered the judgment, and it defended the suit against her. The judgment was set aside as to the other defendant. *Duke Trucking Co. v. Giles*, 185 Ga. App. 833 (366 SE2d 216) (1988). Appellant also defended two other suits against Guy for deaths resulting from the collision.

Prior to trial, on December 23, 1985, Ed Lane, the attorney provided by appellant to represent Guy, had written the three plaintiffs' attorneys suggesting a conference to attempt to settle the three suits for the full amount of the liability coverage under appellant's policy. This letter did not disclose either the policy limits as to liability or the fact that supplemental payments were available in addition to the limits of liability, but it stated that appellant "would be more than willing to pay the policy limits provided that there was agreement between the various parties as how to 'carve up' [the] limits."

On March 20, 1986, Lane sent another letter to the plaintiffs' attorneys in which he wrote that Guy had "a policy with a 10/20 limitation" and again expressed appellant's willingness "to pay these limits upon adjudication or by agreement." Subsequently Lane and the other two plaintiffs' attorneys reached an agreement, which was confirmed in writing, providing for the forbearance from collection of a judgment and the execution of the satisfaction of judgment for payment of a pro rata share of the $20,000 in liability coverage. However, the letters evidencing these agreements made no reference to any agreement or participation in any negotiations by Giles or her lawyer.

During the January 1987 trial in Giles' suit, Lane stated out of the presence of the jury: ". . . I think as between all counsel that there is a full understanding; . . . I am assuming that what I am about to say is correct and if it is agreeable that everyone knows my client has a 10/20 policy, but that I have been confronted with multiple litigation, specifically three suits, that I would have long ago paid my policy limits if I knew who to pay what and we have agreed that we will pro rate the twenty amongst the three plaintiffs when all the litigation is over. . . ." Giles' lawyer responded to this statement by

saying, "That's what I understand."

The last of the three judgments was entered in favor of Giles on January 9, 1987, and no appeals were taken from it. On February 24, 1988, Lane submitted a written offer to pay Giles $10,000 under the policy limitation with pro rata shares to the other plaintiffs "notwithstanding the amount of the judgment. . . . If each of you agree with these computations and are willing to execute a Satisfaction of Judgment in each of these cases, then I request that you indicate your acceptance at the bottom of this letter and return to me. Upon receipt of same, I will prepare the necessary Satisfaction of Judgment, obtain drafts and forward to each of you." (Indention omitted.) Counsel for the other two plaintiffs accepted the offer, but Giles' attorney refused, contending that the amount due Giles was the $10,000 under the liability limit plus post judgment interest of $212,009 on the $1,495,000 judgment. On August 9, 1988, appellant tendered $10,000 into the registry of the court. The tender was refused and on August 18 Giles sued for that amount plus the post judgment interest. The trial court entered summary judgment in favor of Giles for the $10,000 limit of liability plus post judgment interest, computed on the entire jury award from the time of entry of judgment and continuing until the time it was paid.

The insurer contends that the court erred (1) in deciding that Giles had not waived her right to claim interest on the judgment as a matter of fact and law; (2) in failing to find that Giles was estopped as a matter of law from asserting her claim for interest; (3) in holding that it failed to tender the policy limits until August 9, 1988, thereby subjecting it to liability for interest by the terms of the policy, when the evidence showed that it complied with the policy provision both before and after judgment was entered; (4) in holding that the policy required any "tender" of policy limits in order to preclude the running of interest on the judgment; (5) in holding that Giles was entitled to $10,000 on the date of judgment; (6) in failing to find that Giles had agreed, through a solemn admission *in judicio* by her attorney, that it had fully complied with any "tender" or "offer" requirement of its policy, thus precluding the running of interest pursuant thereto; (7) in holding it liable for interest on the entire judgment; (8) in failing to find that Giles was estopped as a matter of law from asserting a claim for interest accruing after February 24, 1988 (the date of the letter offering to pay Giles $10,000 under the policy liability limitation); (9) in finding that the August 9, 1988, tender into court of the policy limits was insufficient to toll the interest from accruing under the policy's supplemental payment provision; (10) in granting Giles' motion for summary judgment; and (11) in denying its motion for summary judgment.

1. Appellant has also filed a motion to supplement the record on

appeal so that we might consider the question of set-off for sums received pursuant to an agreement between Giles and the former co-defendant Duke Trucking Company. Its failure to raise this issue in the trial court in any manner provides no basis for determination on appeal. *Ewald v. Security Pacific Credit Corp.*, 190 Ga. App. 615 (1) (379 SE2d 569) (1989). Accordingly, the motion is denied.

2. In addition to the limit of liability undertaken by the insurer, which was $10,000 per person and $20,000 per occurrence, the insurer promised to make several types of "supplementary payments." One was "Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage."

The obvious purpose of this benefit to the insured is to assure that he or she will quickly receive the primary amount the insurer is obligated to pay under the policy after judgment. It does this by making it expensive for the insurer to delay.

There was no delay occasioned by the insurer in this case. There were multiple plaintiffs, and it appeared early on that if judgments were returned against the insured, the entire amount would exceed the limits. The insurer offered to pay its entire limits even before judgment, in whatever division within the limits the plaintiffs agreed among themselves to accept.

Rather than attempt a prejudgment division, and rather than exhaust the limits by the first or second case to go to judgment, the plaintiffs agreed to await the finality of all the cases so that the limited insurance proceeds could be split among them, prorated according to the judgments.[1] This of necessity constituted a waiver of the postjudgment interest obligation, because the plaintiffs assumed control over when the amount of the payment to each could be ascertained. That is, the insurer would not become obligated to pay postjudgment interest on the first judgment while the latter two cases were pending because it was not yet obligated to pay at all. One cannot be obligated to pay (or "offer") forthwith an amount not yet determined.

From the outset the insurer expressed to all the plaintiffs its willingness to pay out the policy limits and urged them to agree as to apportionment among them. It maintained this position throughout the proceedings, and the delay in payment was expressly understood by appellee to be occasioned by her and the other plaintiffs' desire to ascertain the amount of their respective judgments before they deter-

---

[1] Appellant points out that had this arrangement not been made, appellee would have received only $1,000 rather than $10,000 because the limit of the policy would have been exceeded before her judgment was entered.

mined the portion of the insurance proceeds each would receive.

As soon as the judgments were final and the other defendant's appeal was concluded so that the proration could be computed, the insurer made the computation and sent it to plaintiffs' respective counsel for approval and acceptance.

Thus the insurer did all it reasonably could to pay out its limits in the manner and at the time chosen by the plaintiffs, including appellee. The delay-preventing benefit provided for in the policy's supplementary payments section is inapplicable. We agree with the reasoning and the result reached by the court in the strikingly similar case of *Farmers Alliance Mut. Ins. Co. v. Bethel*, 812 F2d 412 (8th Cir. 1987). At issue was the application of an identical provision.

*Judgment reversed. Carley, C. J., Birdsong, Sognier, Pope and Cooper, JJ., concur. Deen, P. J., McMurray, P. J., and Banke, P. J., dissent.*

DEEN, Presiding Judge, dissenting.

I must respectfully dissent. I find no grounds for reversal for any of the reasons assigned by appellant. Although there are no Georgia cases addressing the issues raised, it is clear under the facts here and the law as established in other jurisdictions that the policy issued by appellant obligated it to pay $10,000 per person under the limits of liability provision and likewise imposed additional duty to pay interest accruing after judgment was entered on the entire amount in any suit it defended.

Insurance policy provisions for post judgment interest have, almost without exception throughout the country, held that the insurer is obligated to pay interest on the entire amount of the judgment, in spite of variations in the language. Other courts when confronted with language almost identical to that here have repeatedly held that the words "all interest accruing after the entry of judgment" requires payment of interest on the entire judgment irrespective of the policy limits. See, e.g., *Di Benedetto v. Estate of Di Benedetto*, 526 A2d 1161 (N.J. Super. L. 1986); *Starke v. Allstate Ins. Co.*, 771 P2d 3 (Colo. App. 1988); *Hartford Accident &c. Co. v. Aetna Ins. Co.*, 527 NE2d 950 (Ill. App. 1 Dist. 1988); *Mut. Of Enumclaw v. Harvey*, 772 P2d 216 (Idaho 1989); *Casey v. Calhoun*, 531 NE2d 1348 (Ohio App. 1987); *Petry v. Richard*, 532 S2d 286 (La. App. 3rd Cir. 1988).

The reasoning behind this policy is two-fold: "In the first place, the insurer's language compels such a conclusion. The phrase referring to interest uses the term 'judgment' without qualification while in the same clause the phrase limiting the duration of the liability for interest refers to 'such part of the judgment as does not exceed the limit of the company's liability thereon.' Obviously the insurer knew how to qualify the term 'judgment' to achieve the result that it urges.

It did not do so. In addition, the realities of the relationship between the insurer and the insured argue against the insurer's interpretation. Under the terms of the policy the insurer has complete control of any litigation from which it might incur liability. The insured cannot settle with the plaintiff without releasing the insurer from its obligation. Any delay that may cause the accumulation of interest is thus the responsibility of the insurer. And until it has discharged its obligations under the policy it should bear the entire expense of this delay." *Di Benedetto*, supra at 1163.

I further concur with the trial judge's ruling that Giles did not agree or otherwise waive her entitlement to post judgment interest, give a satisfaction of judgment, forbear from enforcement of the judgment, or accept any amount less than provided for by the policy. The letters to the three plaintiffs' attorneys did not discuss supplemental payments in addition to the limits of liability, nor did they contain any offer, conditional or otherwise, to pay any sum to Giles. There was no evidence of any agreement or participation in any negotiations on her part. This is also true of Lane's recitation in court, which made no mention of any of the matters to which appellant now claims Giles agreed by promise or estoppel.

Likewise, appellant's obligations under the policy were not satisfied by its tender of the $10,000 policy liability limit following the return of the verdict, as that tender did not include its duty to pay the post judgment interest. "A valid tender must be in the amount due and a tender is invalid when it is for less than what is due. 15 S. Williston, *Contracts*, [§ 1814 (W. Jaeger 3d ed. 1972)]. Partial payment of the contractual obligation does not toll the further accrual of interest on the balance of the judgment. [Cit.]" *Starke v. Allstate Ins. Co.*, supra at 4. Accord *Petry v. Richard*, supra. This is also true in regard to appellant's deposit of only the liability limit in court. See *Di Benedetto*, supra. Thus appellant has never unconditionally offered, tendered or deposited in court the full amount due Giles under its insurance contract.

Therefore, not having satisfied any policy condition which would permit the limitation of its interest obligation, appellant should be required to pay the statutory interest that has accrued on the entire $1,495,000 judgment from the date of its entry. It follows that summary judgment was properly denied to appellant and granted to Giles.

I am authorized to state that Presiding Judge McMurray and Presiding Judge Banke join in this dissent.

DECIDED JUNE 12, 1990 —
REHEARING DENIED JULY 10, 1990 — CERT. APPLIED FOR.

*Goldner, Sommers & Scrudder, Philip M. Casto, Glenn S. Bass, Alfred A. Quillian, Jr., Linda E. Jacobsen,* for appellant.

*Barnes, Browning, Tanksley & Casurella, Charles B. Tanksley, Carr & Kessler, James C. Carr, Jr.,* for appellees.